### KIMBALL *v.* FARMERS' & MECHANICS' BANK OF BUFFALO.

*(Superior Court of Buffalo, General Term. December 30, 1891.)*

MORTGAGE ON SHIP—PRIORITY.

Where plaintiff seized a vessel for foreclosure of his mortgage, but surrendered possession for specific trips on an assignment of the earnings of such trips, the fact that a prior mortgage existed did not deprive plaintiff of his right to the earnings of the vessel pursuant to its surrender, as against a third mortgagee, who seized the vessel after its surrender by plaintiff.

Appeal from judgment on report of referee.

Action by Louis M. Kimball against the Farmers' & Mechanics' Bank of Buffalo to recover the freight earned by the schooner George D. Russell in a voyage from Milwaukee to Buffalo. Defendant had judgment, and plaintiff appeals. Reversed. For a statement of facts, see 11 N. Y. Supp. 730.

Argued before BECKWITH, C. J., and TITUS and HATCH, JJ.
*Sherman S. Rogers*, for appellant.  *Spencer Clinton*, for respondent.

HATCH, J.  When this case was before us on a former appeal (11 N. Y. Supp. 730) the record showed that plaintiff held the first mortgage lien upon the vessel, and, default having been made, was, in consequence, vested with legal title to the vessel.  It appears from the present record that plaintiff was not a first mortgagee, but that another mortgage prior in date, and prior of record, was a lien upon the vessel, and that default had been made upon that mortgage, under the former decision therefor.  Plaintiff held only a lien upon the mortgagor's equitable interest, as that was all the mortgagor could give; but, as between the plaintiff and defendant, the situation, so far as I can see, is not materially changed.  It was asserted before that the equitable right of the second mortgagee was the same as the legal right of the first mortgagee, as between the mortgagor and mortgagee.  This right must continue to hold equally good as to every other lien inferior to it.  *Treat* v. *Gilmore*, 49 Me. 34; *Newman* v. *Tymeson*, 13 Wis. 172.  The doctrine was announced upon the former decision that the assignment was outside the questions involved, and this for the reason that plaintiff was supposed to have the legal title, and, having seized the vessel, the subsequent navigation was the navigation of plaintiff, as he had then constructive possession, and consequently he took title to the freight moneys by virtue of such possession, irrespective of the assignment.  The present situation is somewhat changed.  I am still of opinion that as to all persons except the first mortgagee, the plaintiff had the right to seize, and to thereby obtain, as to such persons, the same rights held by the first mortgagee, as to all persons.  But if we concede that plaintiff had no right of seizure, or that the right of seizure could not affect the freights, then certainly defendant had no superior right, as it was a third mortgagee.  In *Credit Co.* v. *Wilson*, L. R. 7 Ch. App. 507, it is said: "What is the position of a second mortgagee of a ship with respect to the freights?  He has no legal right to take actual possession, and cannot, therefore, by his own act give himself that which is equivalent to possession."  If we adopt this rule, it follows that mere seizure would fail to vest defendant with title to the freight moneys, as against one who had acquired a title prior in date to the seizure.  Thus plaintiff, not having the legal title to the vessel, could nevertheless protect himself as to the freights by any legal method, and thereby obtain a lien upon the freights.  Thus the assignment is superior to any right which the defendant obtained by virtue of its mortgage, for, as it had no lien upon the freight by virtue of its mortgage, it could only obtain such right by virtue of the seizure, if it could at all; but, when it seized, plaintiff already had an assignment, if he took nothing by virtue of his seizure.  From the present record it is quite apparent that if the replevin proceedings instituted in the courts of Wisconsin had been based upon the mortgage held by Mr. Spaulding, and he had then taken possession of the vessel by virtue of the mortgage, and navigated her to Buffalo, his right would have been superior to the right of plaintiff, but in such event he would have been bound to apply the earnings of the voyage, less expenses, to the payment of his mortgage.  Here the seizure of the vessel was by virtue of defendant's mortgage, and all the legal rights obtained by it were based thereon.  Mere "consent and approbation" by the first mortgagee cannot change the legal or equitable rights of the parties.  Spaulding could enforce the payment of his mortgage by application of the freight moneys if he chose to seize, and could also sell the vessel, but he could give no rights, by consent and approbation, to the payment of an inferior lien in derogation of the rights of a superior lienor; otherwise he might pay, by the earning power of the vessel, all inferior liens, and then seize the vessel for his own debt, and cut off a superior lienor to the inferior liens, who had exercised the legal rights held by him, and eventually leave

him remediless. I am of the opinion that neither legal nor equitable rights are thus subject to the benevolence of a superior lienor in favor of inferior liens, where the person affected has obtained rights which the law recognizes. I am therefore of opinion that plaintiff becomes entitled to recover the freight moneys, less the costs and expenses of navigation from Milwaukee to Buffalo. The judgment is therefore reversed, and a new trial ordered before another referee, with costs to abide the event. All concur.